IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY J. ALCORN, | ) |
| Plaintiff, | ) |
| | ) |
| v | ) 2:10-cv-792 |
| | ) |
| LSI a division of LENDER PROCESSING SERVICES, INC., a corporation, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT (Document No. 28) filed by Defendant LSI, a division of Lender Processing Services, Inc. ("LSI"), with brief in support. Plaintiff Bethany Alcorn ("Alcorn") filed a response and brief in opposition. The parties have developed their respective positions as to the Concise Statement of Material Facts ("CSMF") and have submitted numerous exhibits. The motion is ripe for disposition.

Factual and Procedural Background

LSI is a provider of property valuation, title and closing services to the mortgage industry. In 2008 the domestic housing market was in the midst of a crisis. Mortgage lenders (LSI's clients) were failing at such an unprecedented rate that an online "Mortgage Lender Implode-O-Meter" was developed to track the business closures. Accordingly, LSI was forced to dramatically reduce its overhead and costs, which included employee layoffs. In April 2008, LSI employed 650 people in its appraisal division but by September/October 2008 only 350 employees remained in the appraisal division.

1

Alcorn started her employment at LSI in 1997 and by April 2008 was a Vice President in the Appraisal Operations Division reporting to Kate Rice until her termination on September 3, 2008. Alcorn's principal job duties were supportive in nature and most of her interactions were completed via telephone or computer. Many of the persons with whom she interacted were located in other time zones. Alcorn did not directly supervise anyone.

On April 18, 2008 Alcorn was involved in a non-work-related car accident in which she sustained multiple transverse process fractures in her lumbar spine. At the time of the accident, the treating orthopedic surgeon predicted that the type of injury she had suffered can take several months to as long as six months to heal. A little more than two months after the accident, Alcorn was able to resume most daily activities. Unfortunately, Alcorn's injury did not completely heal as quickly as expected. She experienced significant back pain through September 2008 and one of her fractures had not yet healed. Nevertheless, on September 12, 2008, Jory D. Richman, M.D., her treating physician and a board-certified orthopedic surgeon, released her to return to work without restrictions. Alcorn Deposition at 64, 70. In November 2008, Alcorn's primary care physician, James S. Meditch, Jr., M.D., opined that she was still limited to sitting and standing for twenty to thirty minutes at a time. Alcorn does not have any ongoing problems as a result of her back injury.

Alcorn kept in touch with Jill Trost, LSI's human resources generalist, regarding her leave needs. Immediately following the accident, Alcorn was placed on FMLA leave. On June 17, 2008, Alcorn indicated to Trost that she did not anticipate being able to return to work for an additional four to six weeks. Alcorn testified that during this time, she notified Kate Rice that she was able to perform the essential functions of her job from home but Rice refused this proposed

accommodation.[1] Alcorn has submitted a photocopy of her calendar from June 20-22, 2008 with the notation: "Kate – can't work until I am in office fulltime. No."

On June 25, 2008 Dr. Jory Richman extended Alcorn's work restriction until August 22, 2008. After Alcorn's FMLA leave expired on July 10, 2008, LSI permitted Alcorn to take a personal leave of absence until August 22, 2008. On August 19, 2008, Alcorn contacted Trost to request a further extension of leave until September 12, 2008.

On September 2, 2008 at 10:14 a.m., Kate Rice sent the following email to Mark Johnson, LSI's Chief Operating Officer:

> Mark I am being asked to approve[] Bethany's personal leave extension again this time through 9/12/08.
> Please be advised that Bethany Alcorn was placed on Family Medical Leave effective 4/18/08 with an evaluation for release on 6/23/08. Since this date we have been approving extensions to her personal leave.
>
> Your thoughts>? She has removed herself completely from work related discussions since April ….(in contrast for example to Beth who is also on leave but checking in multiple times a day).
>
> When do we say enough?
>
> Kate.

Forty-four minutes later, at 10:58 am, Kate Rice informed Trost that "[b]ased on market conditions we have determined that Bethany's position has been eliminated and she can be laid off." LSI has not submitted documentation of any analysis it performed with respect to Alcorn's position. Alcorn was terminated effective September 3, 2008. Alcorn was the only person who directly reported to Rice whose employment was terminated in 2008. This litigation followed.

---

1 Plaintiff has submitted medical opinions from Dr. Richman, Dr. Meditch, and Derek J. Thomas, M.D., for the proposition that Alcorn could have worked from home as of June 2008, albeit with some restrictions.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must "'view the evidence ... through the prism of the substantive evidentiary burden' to determine 'whether a jury could reasonably find either that the plaintiff proved [her] case by the quality and quantity of evidence required by the governing law or that [she] did not.'" *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, then the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue of fact for trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)). A district court may not "make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

4

Legal Analysis

Alcorn alleges discrimination and failure to accommodate under the Americans With Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). The analysis of the ADA and PHRA claims is "basically the same" such that the disposition of the ADA claims applies with equal force to the PHRA claims. *Rinehimer v. Cemcolift, Inc*., 292 F.3d 375, 382 (3d Cir. 2002).

To establish a claim for disability discrimination, a plaintiff must demonstrate that (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 306 (3d Cir. 1999). An "adverse employment decision" includes an employer's failure to reasonably accommodate the employee's disability. *Taylor*, 184 F.3d at 306.

An employer has a duty to engage in a good faith interactive process with the employee. *Williams v. Philadelphia Housing Authority Police Dept*., 380 F.3d 751, 771 (3d Cir. 2004). To show that an employer failed to undertake the interactive process in good faith, an employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id*. at 772 (quoting *Taylor*, 184 F.3d at 319-20). The familiar McDonnell-Douglas burden-shifting approach applies. If Plaintiff makes out a prima facie case, the burden shifts to the employer to produce evidence of a

5

legitimate, non-discriminatory reason for its action, and the burden then returns to Plaintiff to demonstrate that the employer's proffered reason is pretextual. *Stouch v. Township of Irvington*, 354 Fed. Appx. 660, 666 (3d Cir. 2009) (unpublished).

LSI raises several contentions in support of its summary judgment motion: (1) that Alcorn's back injury was not a "disability"; (2) that LSI appropriately engaged in an interactive process and provided a reasonable accommodation by extending Alcorn's leave of absence and that Alcorn's request for additional leave was unreasonable; and (3) that Alcorn's position was eliminated as a result of the crisis in the mortgage industry. Plaintiff has responded to each of these contentions. Alcorn argues that she had a temporary disability at the time of her termination or, at a minimum, that there is a triable issue of fact on that issue. Alcorn vigorously denies that LSI engaged in an interactive process or offered the reasonable accommodation of allowing her to work from home. Finally, Alcorn contends that LSI's asserted business justification for terminating her employment is pretextual, based on the Kate Rice emails of September 2, 2008.

Plaintiff has presented compelling evidence from which a reasonable jury could conclude that LSI failed to reasonably accommodate her request to work from home and that LSI's assertion that Alcorn was terminated due to "market conditions" was a pretext for discrimination. The two emails from Kate Rice on September 2, 2008 – just forty-four minutes apart – provide strong evidence that Alcorn was terminated due to her leave status, rather than for legitimate business reasons. Nevertheless, for the reasons set forth below, the Court concludes that Alcorn did not have a "disability," as defined in the ADA. Therefore, Alcorn cannot establish a prima facie case and the Court will grant LSI's motion for summary judgment.

During April through early September 2008, the relevant time period of Alcorn's injury

6

and job termination, the ADA defined the term "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[2] The ADA requires an individualized, case-by-case approach to evaluating whether a plaintiff's impairment is severe enough to constitute a disability. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999). To determine whether a condition "substantially limits" a major life activity, the Court must consider such factors as "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (2007).

In *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002), the United States Supreme Court concluded that the term "disability" must be interpreted strictly and held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Similarly the United States Court of Appeals for the Third Circuit has held that "only extremely limiting disabilities-in either the short or long-term-qualify for protected status under the ADA." *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 362 (3d Cir. 2000). In *Bolden v. Magee Women's Hosp. of University of Pittsburgh Medical Center*, 281 Fed. Appx. 88 (3d Cir. 2008) (unpublished), the Court stated: "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Id*. at 90. The Court explained that the ADA was designed to protect "truly disabled" but genuinely capable individuals

---

2 The parties agree that the amendments to the ADA enacted on September 25, 2008 do not apply to this case.

from discrimination and that the expansion of the ADA to individuals with broken bones and other temporary ailments "would trivialize this lofty objective." *Id*. (citations omitted).

The key dispute in this case is whether the duration of Alcorn's injury was lengthy enough to constitute a "disability." Plaintiff cites the EEOC Compliance Manual §902.4(d) for the proposition that a long-term (but non-permanent) condition may constitute a disability. The Compliance Manual illustrates that blindness and paralysis from which the person is expected to recover eventually "at some indeterminable time in the future" would constitute a disability. The Compliance Manual also attempted to describe the parameters at each end of the temporal continuum. On one hand, a fractured ankle which healed properly in five weeks would not be a disability. On the other hand, if surgery on a fractured ankle was unsuccessful and the physician predicted that the person would experience excruciating pain indefinitely, the person would have a disability. Similarly, a broken leg which required eleven months to heal (significantly longer than the normal healing period), during which time the person could not walk without crutches, would be a disability. The facts of this case are distinguishable from both ends of this continuum. The only case cited by Alcorn as to the definition of the term "disability" was *Peter v. Lincoln Technical Institute, Inc*., 255 F.Supp.2d 417, 434 (E.D. Pa. 2002) (involving sleep apnea), in which the discussion of disability was dicta because the plaintiff had failed to request a reasonable accommodation and had not timely filed a charge with the EEOC. *Id*.

Defendant, by stark contrast, cited numerous cases, many of which constitute binding precedent. In *McDonald v. Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995), the United States Court of Appeals for the Third Circuit stated: "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Accord Rinehimer,* 292 F.3d at 380 (noting that "a

8

temporary, non-chronic impairment of short duration is not a disability" under the ADA). In *Taylor*, 177 F.3d at 186-87, the plaintiff's inability to stand or walk for more than fifty minutes at a time did not constitute a disability. In *Kelly v. Drexel University*, 94 F.3d 102, 108 (3d Cir.1996), the Court concluded that a hip fracture did not constitute a disability. In *Bolden*, 281 Fed. Appx. at 90, the Court held that an injury that required seven months to fully heal was not a disability:

> the evidence establishes that Bolden suffered an arm injury constituting a temporary, non-chronic impairment of brief duration, with no long term or permanent effect. Within four months of her accident, she was able to resume many of her activities; within five months, she was able to resume most of her activities; within seven months, she was able to resume all of her activities without restriction. The District Court correctly determined that no reasonable juror could find that Bolden had a "disability" within the meaning of the ADA.

The Court's independent research has confirmed that a demanding standard must be met. In *Jacoby v. Arkema Inc.*, 2007 WL 2955593 *10 (E.D. Pa. 2007), the Court concluded that replacement of both knees was "clearly more severe than a broken limb" but did not constitute a "disability. In *Singleton v. Mellon Financial Corp.*, 2005 WL 2403722 (W.D. Pa. 2005), the Court held that the plaintiff's back surgery and subsequent pain did not render him disabled. In *Danyluk-Coyle v. St. Mary's Medical Center*, 2001 WL 771048 (E.D. Pa. 2001), a fractured ankle did not constitute a disability. The Court stated: "Suffice it to say that temporary, non-chronic injuries, with little or no long term permanent impact, such as fractures, simply do not rise to the level of a disability within the definition of the ADA." *Id.* at *2.

The record in this case reflects that Alcorn suffered fractures to three vertebra in a car accident on April 18, 2008; resumed fairly normal daily activities two months later; was able to work from home by June 2008; and was released by her doctor to return to work full-time without restrictions on September 12, 2008 – less than five months after the accident. Alcorn has no

9

residual health problems from the car accident. The treating physician predicted that the injury would take up to six months to heal. In some instances, a non-permanent injury that takes longer than expected to heal may give rise to a disability. Nevertheless, under the facts and circumstances of this case it is clear that Alcorn suffered a temporary, non-chronic injury that does not constitute a "disability" under the demanding standard required by the prior opinions of the United States Supreme Court and United States Court of Appeals for the Third Circuit. Indeed, convalescence from a fractured bone is the classic example of a temporary injury that does **not** constitute a disability under the ADA.

Accordingly, the MOTION FOR SUMMARY JUDGMENT (Document No. 28) filed by Defendant LSI will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY J. ALCORN,<br>      Plaintiff,<br><br>    v<br><br>LSI a division of LENDER PROCESSING SERVICES, INC., a corporation,<br>      Defendant. | )<br>)<br>)<br>) 2:10-cv-792<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 11th day of July, 2011, in accordance with the foregoing memorandum opinion, it is ORDERED, ADJUDGED, and DECREED that the MOTION FOR SUMMARY JUDGMENT (Document No. 28) filed by Defendant LSI is **GRANTED**. The clerk shall docket this case closed.

                BY THE COURT:

                s/ Terrence F. McVerry
                United States District Court Judge

cc:  Jean E. Novak, Esquire
    Email: jnovak@smgglaw.com

    Bethany C. Salvatore, Esquire
    Email: bethany.salvatore@bipc.com
    Paul S. Mazeski, Esquire
    Email: paul.mazeski@bipc.com